Nick K. Brooke
Stephens Brooke, P.C.
315 W. Pine
Missoula, MT 59802
Phone: (406) 721-0300
nick@stephensbrooke.com

Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No.: CR 25-26-M-DWM |
| Plaintiff, | |
| vs. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| ZABI ULLAH MOHAMMED | |
| Defendant. | |

Defendant Zabi Mohammed, by and through counsel, Nick K. Brooke,

STEPHENS BROOKE, P.C., gives the following sentencing memorandum.

**PSR OBJECTIONS**

**1. The PSR inflates the loss amount attributed to Mohammed.**

Zabi was, even by the Government's version of events, one courier in a vast

organization. Some victims had money picked up by four separate individuals.

1

These individuals were directed by a "Center Team," which also called and manipulated the victims in this case.

Zabi should only be held accountable for the losses directly attributable to his activities, which totals $$1,700,900 in the Government's loss table at Trial Exhibit 95 (attached).

U.S.S.G. § 1B1.3(a)(1) provides:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

(i) within the scope of the jointly undertaken criminal activity,
(ii) in furtherance of that criminal activity, and
(iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense

The application notes of that same subsection provide specific requirements that must be met before imposing liability for the conduct of others:

1. Sentencing Accountability and Criminal Liability.—The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held

accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator.

*Id.*, App. Note 1.

In General.—A "jointly undertaken criminal activity" is a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy.

In the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is accountable for the conduct (acts and omissions) of others that was:
(i) within the scope of the jointly undertaken criminal activity;
(ii) in furtherance of that criminal activity; and
(iii) reasonably foreseeable in connection with that criminal activity.

The conduct of others that meets all three criteria set forth in subdivisions (i) through (iii) (i.e., "within the scope," "in furtherance," and "reasonably foreseeable") is relevant conduct under this provision. However, when the conduct of others does not meet any one of the criteria set forth in subdivisions (i) through (iii), the conduct is not relevant conduct under this provision.

Id. App. Note 3(A).

The Ninth Circuit discussed "the scope of the defendant's agreement" in

*United States v. Lloyd*, 807 F.3d 1128, 1142 (9th Cir. 2015). "[W]e have held that a

district court may not automatically hold an individual defendant responsible for

losses attributable to the entire conspiracy, but rather must identify the loss that fell

within the scope of the defendant's agreement with his co-conspirators and was

reasonably foreseeable to the defendant." *Id*. (internal quotations and citations

omitted). In considering jointly undertaken conduct in a telemarketing Ponzi scheme, "the scope of a joint undertaking for sentencing purposes depend[s] on whether the telemarketers 'worked together,' 'relied on one another to make a sale,' attended the same sales meetings, and 'depended on the success of ... the operation as a whole for their financial compensation.' " *United States v. Treadwell*, 593 F.3d 990, 1005 (9th Cir. 2010).

The facts of *Lloyd* are helpful here. Lloyd and his co-defendant were part of a "boiler room" scheme to sell unregistered securities via telemarketing. Lloyd and his co-defendant used similar tactics and sold similar fraudulent investments based on materials from their employer. But Lloyd and his co-defendants "did not pool customers, information or other resources. In this respect, [Lloyd's co-defendant] was like a drug dealer who gets the drugs he sells from the same sources as other dealers and knows about their work, but does not share drugs, customers, or information with them." *Id.* 807 F.3d at 1143.

The Government created and submitted a table of Mohammed's pickups at trial. Exhibit 95 attached. Mohammed's personal pickups of cash and gold total $1,700,900. The Government believes Mohammed should be held responsible for all pickups for victims, exceeding $3.6 million.

Mohammed's conduct in this case was that of a courier. He did not know other individuals involved outside of his handler. He did not share information

with other couriers, rely on or work together with them, or even meet with them. Mohammed would go where the center team would tell him to go, and if he did not go there, someone else was sent. The final victim, Kate Soukonnikov, testified that she had given nearly one million dollars to four separate individuals before Mohammed arrived at her house.  Even in the case of Mr. Siddiqui, Mohammed's brother in law, Mohammed simply forwarded details from his handler to Siddiqui, and gave him no other guidance or cooperation. His conduct is analogous to the drug dealer who gets his drugs from the same kingpin as other low level dealers; he did not have involvement in pooling customers, information, or tactics. He didn't even *talk* to these customers, he simply accepted money. He should not be saddled with loss amounts that other couriers picked up.

The amount attributable to Mohammed, approximately $1.7 million, would put him two levels lower than the current PSR calculations.

2. **The Loss Amount should be reduced by $420,000 because there is insufficient evidence to call this amount loss.**

Part of the loss amount includes $420,000 in gold. For all other loss amounts, the Government can identify the persons who lost the money, or at minimum, where Mohammed picked up the money based on where his handler told him to go. But for this $420,000 amount, the Government does not know who lost this amount of gold, where it came from, or whereabout Mohammed picked it

up. The only evidence presented by the Government regarding this gold is three pictures found on Zabi's phone depicting pieces of gold, depicted at Government's Trial Exhibit 53.

The facts in support of a sentencing enhancement must be proven by a preponderance of the evidence. *United States v. Lucas*, 101 F.4th 1158, 1163 (9th Cir. 2024). The Government presented proof at trial that Mohammed picked up money and sometimes gold from multiple locations, but of those pickups were supported by witness testimony or direct information on his phone of the address of the pickup. This gold amount in question does not follow that same pattern. Instead, Exhibit 53 is a picture of gold without context. It is unclear if the picture was taken by Mohammed or ever picked up by him. The Government is greatly inflating the loss amount based on three pictures.

If both objections are sustained, the loss amount corresponds to +14, "more than $550,000 but less than $1,500,000." If only the first objection is sustained, it corresponds to +16.

3. **There is insufficient proof that a "substantial part of the scheme" originated in India.**

The Government contends that this scheme originated in India. However, other than the phone and statements of Mr. Mohammed, the Government has not actually provided any evidence linking this case to India. The Government has

made no arrests in this case other than Mohammed, despite him giving a statement, his phone passwords, and offering further assistance. Mohammed would pick up money in the United States and drop it off at other locations in the United States and told the Government of these locations; the Government has never traced these drop-offs to India or anywhere else.

Mohammed believed that his main handler, Rocky, was located in India. That was never investigated or confirmed by the Government. Mohammed believed the "Center Team" was located in India. That was never investigated or confirmed by the Government. Many of the victims believed that their contacts were located in the United States, and described accents ranging from American to British to Hispanic. It is unknown where those callers were actually located. The PSR recounts Agent Schrader's view that Mohammed's phone contained numerous phone numbers from India. *See Addendum*. Zabi Mohammed *is from India*. He lived there for his entire life before moving to the United States, it would be expected that he calls people in India.

There is insufficient evidence that a "substantial part of the scheme" occurred in India. The Government focused its investigation on Mohammed and did not pursue the information he gave regarding his handler or the places he dropped off money. The Government cannot now claim knowledge of the origin of this scheme.

4. **Mohammed should get a zero point offender reduction because he did not personally cause the loss at issue here.**

The PSR finds that Mohammed does not qualify for the Zero Point Offender reduction because he "personally caused substantial financial hardship" to his victims. The word "personally" is distinct from other enhancements in the guidelines for Economic Offenses; other enhancements are based on the number of victims or the loss related to the offense regardless of whether the offender personally caused the loss.

Defendants "personally cause substantial financial hardship only when they are directly involved in defrauding the victim, not when they act as middlemen in a fraudulent conspiracy." *United States v. Daramola*, No. 20-CR-2124 MV, 2024 WL 4241840, at *5 (D.N.M. Sept. 19, 2024).  Mohammed was less than a middleman, he was a bottom-level courier. The individuals who manipulated these victims spent months deceiving the victims. Mohammed showed up and picked up a package, later dropping it off within a day. If he was unavailable or not nearby, someone else was sent in his place. Since Mohammed's arrest, numerous other instances of this scheme have occurred; his physical handling of the money was inconsequential to the loss sustained here.

5. **Mohammed should receive a minimal participant reduction.**

The jury acquitted Mohammed of Impersonating a Federal Agent because it recognized how disconnected Mohammed was from the deception of this scheme. The individuals who spoke with the victims took great efforts to impersonate government agents, insisting that they were Federal Trade Commission, or U.S. Marshalls, or some other agency. But Mohammed showed up to pickups without identifying himself as law enforcement, often dressed in regular clothes or even sweatpants. The jury's verdict is a signal that Mohammed is less culpable for this conspiracy than the main perpetrators.

## CONCLUSION

The factors enumerated in 18 USC 3553(a) will be discussed at sentencing.

Respectfully submitted this 13th day of February, 2026.

By: /s/ Nick K. Brooke
Nick K. Brooke
Counsel for the Defendant

## **CERTIFICATE OF SERVICE**

I, Nick K. Brooke, do hereby certify that a true and correct copy of the foregoing was served upon the following by the means indicated.

Katy Stack                                                                    [x] CM/ECF
*Assistant United State's Attorney*

Dated this 13th day of February, 2026.

By: /s/ Nick K. Brooke
Nick K. Brooke
Counsel for the Defendant

10